UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Daniel M. Furesz, | Civil Action No. 13-2909 (PGS) |
| Petitioner, | |
| v. | OPINION |
| United States of America, | |
| Respondent. | |

APPEARANCES:
Daniel Furesz, pro se
#61883-050
Federal Correctional Center - Petersburg
P.O. Box 1000
Petersburg, VA 23804

Aaron Mendelsohn
Assistant U.S. Attorney
United States Attorney's Office
970 Broad Street
Newark, NJ 07102

SHERIDAN, District Judge

Petitioner, Daniel Furesz ("Petitioner," or "Furesz"), filed the instant petition for habeas corpus pursuant to 28 U.S.C. § 2255. (*See* ECF No. 5.) While Petitioner raises several claims related to his firearm convictions, none of them warrant habeas relief. For the reasons set forth below, the Petition is denied.

I. FACTS

On September 10, 2009, the Hasbrouck Heights Police Department (the "HHPD") received a complaint of a lewd act being performed by a man in an automobile while driving.

1

(*See* ECF No. 18 at 4.) The witness provided the make and model of the driver's car, which allowed the HHPD to detain a vehicle matching that description. The witness then returned to the scene and identified Petitioner as the performer of the lewd act. The HHPD arrested Petitioner, issued him a citation, and released him pending his court date. Petitioner's car was also towed and impounded. (*Id.*) The following day, a firearm was found in Petitioner's vehicle at the impound lot. After finding the firearm, the HHPD interviewed Petitioner who admitted the firearm was his.

Following this incident, on December 3, 2009, Petitioner's sister reported to the Washington Township Police Department (the "WTPD") that Petitioner threatened to kill her and her family. (*Id.*) Petitioner's sister also told the WTPD that Petitioner had a large cache of firearms and ammunition in his home. The Bergen County Municipal Court issued Petitioner's sister a temporary restraining order and a warrant to search Petitioner's home for firearms. When the WTPD executed the warrant, they found thirty-six firearms at Petitioner's home. (*Id.*)

## II. PROCEDURAL HISTORY

On June 11, 2010, a federal grand jury returned a two-count indictment charging Petitioner with possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1), on two occasions.[1] Count One charged Petitioner with possessing the firearm found in his car on September 10, 2009, and Count Two charged Petitioner with possessing the thirty-six firearms found in his home on December 3, 2009. (*See* ECF No. 18 at 5.) On August 26, 2010, the Court ordered a mental health evaluation of Petitioner to determine if he was competent to stand trial. Dr. William Ryan, a forensic psychologist, prepared an initial competency evaluation on October

---

[1] Petitioner has several prior felony convictions regarding lewd acts in public. (*See* ECF No. 18 at 11.)

2

26, 2010, and an addendum on February 11, 2011. (*Id.*) Dr. Ryan determined that Petitioner was competent to stand trial though he suffered from Exhibitionism and Bipolar Disorder. (*Id.*)

Dissatisfied with his hired representation, in February 2011 Petitioner filed a request with the Court to represent himself at trial. The Court granted the request, and required Petitioner's attorney to act as stand-by counsel. Shortly after, on February 22, 2011, Petitioner signed a written plea agreement with the government. The plea agreement stipulated that Petitioner's total offense level was 23, and contained a mutual waiver of the right to file a collateral attack, including under 28 U.S.C. § 2255, if Petitioner was sentenced within the Guidelines range for an offense level of 23. (*Id.*; *see also* ECF No. 19-1 at 62.) On February 24, 2011, the Court conducted a plea hearing and ultimately accepted Petitioner's guilty plea. (*See* ECF No. 19-1 at 100-101.)

Subsequently, on March 8, 2011, Petitioner sent the Court a letter alleging his innocence of the crimes charged and wishing to withdraw his guilty plea. (*See* ECF No. 19-1 at 103-106.) The Court construed Petitioner's letter as a motion to withdraw his guilty plea, and on April 26, 2011, heard argument on that motion. After argument, the Court denied Petitioner's motion to withdraw and placed its findings on the record. Soon thereafter, Petitioner sent another letter to the Court that was construed as a motion to reconsider the Court's denial of Petitioner's motion to withdraw his guilty plea.

On July 29, 2011, the Court heard argument on Petitioner's motion to reconsider and ultimately denied it, concluding that the "[the plea agreement] was voluntarily entered into." (*Id.* at 100.) Shortly thereafter, the Court held a sentencing hearing where Petitioner argued for a downward departure because he felt his criminal history was overstated. The Court denied Petitioner's request, instead adopting the U.S. Probation Office's recommendations for an

3

offense level of 23, a criminal history category ("CHC") of IV, and an applicable advisory Guidelines range of 70 to 87 months for each Count. The Court then imposed a custodial sentence of 70 months on each Count, to run concurrently.

Petitioner then filed a timely appeal with the Third Circuit Court of Appeals, arguing that the plea agreement was not knowing, voluntary, and intelligent and that the sentence of 70 months was unreasonable because the Court erred in not granting Petitioner a downward departure.

On September 25, 2012, the Third Circuit affirmed the conviction and sentence in a written opinion. The Third Circuit concluded that (1) the District Court did not abuse its discretion in determining that Petitioner's plea was knowing, voluntary, and intelligent, and (2) that Petitioner's challenge to his sentence is precluded by the appellate waiver in said plea agreement. (*See* ECF No. 18-8 at 4-5.) Petitioner then timely filed the present amended petition to vacate his sentence pursuant to 28 U.S.C. § 2255 on June 27, 2013. (*See* ECF No. 6.) For the reasons set forth below, Mr. Furesz's petition is denied.

### III. CLAIMS

> (1) Ineffective assistance of trial counsel for failure to communicate favorable plea offer to defendant before it lapsed.
>
> (2) Ineffective assistance of trial counsel for failure to file a motion to dismiss pursuant to the Speedy Trial Act.
>
> (3) Ineffective assistance of appellate counsel for failure to challenge the voluntariness of Petitioner's waiver of counsel when electing to represent himself.
>
> (4) Ineffective assistance of appellate counsel for failing to challenge the trial court's decision not to hold a competency hearing before sentencing.

*See* ECF No. 5 at 4-24.

## IV. DISCUSSION

A. Standards Governing Petitioner's Claims

Section 2255 of Title 28, United States Code, provides in relevant part that

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating an ineffective assistance of counsel claim. First, the petitioner must show that, considering all of the circumstances, counsel's performance fell below an objective standard of reasonableness. *Id.* at 688; *see also Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013). This means that Petitioner must identify acts or omissions that are alleged not to have been the result of reasonable professional judgment. *Strickland*, 466 U.S. at 690. Second, Petitioner must affirmatively show prejudice, which is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Additionally, the Third Circuit has "reasoned that 'there can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.'" *U.S. v. Bui*, 769 F.3d 831, 835 (3d Cir. 2014) (citing *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999)).

B. Waiver of the Right to Appeal

A criminal defendant may voluntarily waive his right to appeal a conviction and sentence.

*U.S. v. Mabry*, 536 F.3d 231 (3d Cir. 2008). Such a waiver is considered comprehensive. *United States v. Gwinnett,* 483 F.3d 200, 204 (3d Cir. 2007). The only instance where a court could refuse to honor such a waiver occurs when either the defendant did not knowingly and voluntarily agree to the waiver, or enforcing the waiver would result in a miscarriage of justice. *Mabry*, 536 F.3d at 236-237. Such a waiver is typically enforceable because it is part of a bargain made between two parties. *United States v. Khattak*, 273 F.3d 557, 561 (3d Cir. 2001).

Petitioner first argues that the waiver he signed as part of his plea agreement should not be enforced because the plea agreement, was not signed voluntarily, knowingly, and intelligently. (*See* ECF No. 5 at 24.) Worthy of note here is that "a defendant's declarations in open court carry a strong presumption of verity," *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977), and that "bald assertions of innocence after the fact do not rebut that presumption." *U.S. v. Robsinon*, 427 F. App'x 163, 166 (3d Cir. 2011). To wit, "[a]ssertions of innocence must be buttressed by facts in the record that support a claimed defense." *U.S. v. Brown,* 250 F.3d 811, 818 (3d Cir. 2001). Once a defendant has pleaded guilty, "he must then not only reassert innocence, but give sufficient reasons to explain why contradictory positions were taken before the district court . . . ." *United States v. Jones*, 336 F.3d 245, 252-53 (3d Cir. 2003) (internal quotations and citations omitted).

The Court has already addressed this matter three times: at the initial plea hearing, finding Petitioner's plea knowing and voluntary; at the hearing on Petitioner's motion to withdraw his plea, finding Petitioner's plea knowing and voluntary; and at the hearing on Petitioner's motion to reconsider the Court's denial of Petitioner's request to withdraw his plea, finding Petitioner's plea knowing and voluntary and finding no manifest injustice resulting from enforcing the plea. (*See, e.g.*, ECF No. 19-1 at 93; ECF No. 23-1 at 14; ECF No. 25-1 at 34.) The

Third Circuit also addressed this matter on direct appeal and found Petitioner's plea knowing and voluntary. (*See* ECF No. 18-8 at 4.) ("...the District Court questioned Furesz on his understanding of the waiver of appeal provision in the plea agreement and concluded that Furesz understood the waiver.").

The Court will again look to the colloquy between the Court and Petitioner during the plea hearing, because to "determin[e] whether a waiver of appeal is 'knowing and voluntary,' the role of the sentencing judge is critical." *U.S. v. Price*, 558 F.3d 270, 284 (3d Cir. 2009) (quoting *Khattak*, 273 F.3d at 563). Here, there is an extensive colloquy between the Court and Petitioner, during which Petitioner repeatedly swore to understand and accept the plea. To wit, Petitioner swore, in open court, that he was agreeing to the plea voluntarily and specifically acceded to the presence of the waiver:

> THE COURT: So, [AUSA] Mendelsohn is there -- I know we talked about a waiver of appeal, but could you please place that on record again?
> MR. MENDELSOHN: Certainly, your Honor. There is a waiver of appeal, and that waiver of appeal is included in the stipulations to the plea agreement, in paragraphs 10, and 11, address appellate waiver ... The defendant, Mr. Furesz, he **waives his right to appeal any sentence that falls within or below the guideline offense level of 23**. Mr. Furesz also waives his right to file an appeal, a 2255 petition, writ, motion or collateral attack, challenging his term of imprisonment or any other aspect of the sentence, if this Court imposes a term of imprisonment within or below the guideline range of 23.
> THE COURT: All right, thank you. So, Mr. Furesz, do you understand that under certain circumstances you're waiving your right to appeal?
> THE DEFENDANT: **Yes, your Honor.**
> THE COURT: That means once we decide it, the case is over; do you understand that?
> THE DEFENDANT: **I understand, your Honor.**
> THE COURT: And have you discussed that matter with [your attorney]?
> THE DEFENDANT: Yes, in pretty much detail.
> ...
> THE COURT: Now, Mr. Furesz, you're waiving your right to appeal, that's a knowing -- you are doing that knowingly and voluntarily; right?
> THE DEFENDANT: **Yes, your Honor.**

*See* ECF No. 19-1 at 93-95 (emphasis added).

The Court also noted during the same hearing that "[i]t's obvious to [the Court] that [Petitioner] appears to be a very intelligent person; he understood the questions, he answered responsively; and I have no doubt in my mind he entered this plea intelligently, knowingly and voluntarily." (*See* ECF No. 19-1 at 100.) Soon thereafter, the Court held a hearing on Petitioner's motion to withdraw his guilty plea. During that hearing, the Court noted that Petitioner's claims of ineffective assistance of counsel made little sense, as he was representing himself at the time, and found Petitioner's "bald assertions" of innocence to be unavailing. (*See* ECF No. 22-1 at 35-36; *see also* ECF No. 23-1 at 14) ("It seems to me that [the plea] was reasonably obtained without coercion, and there's really no basis to accept that Mr. Furesz is innocent of the charges."). Lastly, Petitioner moved the Court to reconsider its earlier decision not allowing Petitioner to withdraw his guilty plea. There, the Court noted that "a reconsideration of a decision after it's entered is extraordinary remedy, requests ... are granted usually sparingly." (ECF No. 25-1 at 16.) The Court again found no evidence to revisit its earlier decisions, finding Petitioner's plea agreement both knowing and voluntary. The Court also noted, in finding no manifest injustice to enforcing the plea, that "Mr. Furesz's demeanor [during his plea hearing] was very calm, he understood the facts; I didn't see any portion of that case where he was under [any kind of] duress." (*See* ECF No. 25-1 at 20.)

On direct appeal, the Third Circuit, in a written opinion, found that the District Court did not abuse its discretion in finding Petitioner's plea to be knowing and voluntary. (*See* ECF No. 18-8 at 4.) The Third Circuit noted that "Furesz's contention that he was under duress at the hearing from an implicit threat of a higher sentence" is belied by the District Court's findings. (*Id.* at 5.) The Third Circuit also noted that Petitioner's challenge to his sentence is really a challenge "to the Court's failure to grant [Petitioner's] motion for a downward variance" of his

8

criminal history category, and is thus barred by the waiver contained in his plea agreement. (*Id.* at 6.)

Here, Petitioner has presented no new evidence to the Court that would mandate a reversal of the Court's prior holdings that Petitioner's plea agreement was both knowing and voluntary. Because Petitioner presents no such evidence, the Court will affirm its earlier holdings that Petitioner entered into his plea agreement knowingly, intelligently, and voluntarily, and thus the appellate waiver contained within is enforceable.

That said, a waiver of appellate rights contained in a valid plea agreement may still be set aside if enforcing such a waiver would result in a miscarriage of justice. It must be noted that "it will be a rare and unusual situation when claims of an unreasonable sentence, standing alone, will be sufficient to invalidate a waiver because of a miscarriage of justice." *United States v. Stabile*, 633 F.3d 219, 248 (3d Cir. 2011) (internal citations omitted). In deciding whether enforcing a waiver would result in such a miscarriage, a court considers

> The clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

*Khattak*, 273 F.3d at 563 (quoting *United States v. Teeter*, 257 F.3d 14, 26 (1st Cir. 2001)).

The Court in *Khattak* went on to note that the aforesaid factors "provide some guidelines for determining when a particular sentencing error may warrant vacating an otherwise valid waiver of appeal." *Id.* It stands to reason, then, that if there is no sentencing error, there is no miscarriage of justice. Here, Petitioner argued, before sentencing, for a downward departure of his CHC. Petitioner had three convictions within 15 years of his arrest that led to the instant petition, each worth three points. (*See* ECF No. 25-1 at 26.) A total of nine points warrants a

CHC of IV, advising a Sentencing Guidelines range of 70-87 months. Petitioner argued for a departure downward due to an "overstatement" of his criminal history. (*Id.* 29.) Petitioner argued, through counsel, that pre-trial services "overstated" his criminal history because his prior convictions were all for various acts of lewdness, not violent crimes, and the court-appointed psychologist had previously diagnosed Petitioner with Exhibitionism, which likely contributed to the crimes of which Petitioner was convicted (*Id.* at 29-30.) The government argued against this motion vociferously, noting that Petitioner's antecedent criminal acts may not have been violent, but they were not "minor misdemeanors" and thus should not be granted a downward departure. (*See* ECF No. 25-1 at 33.) The government also argued that, though Petitioner only had three convictions within 15 years of the instant arrest, there were some twenty convictions outside of that range that were not counted. (*See id.*) The Court denied Petitioner's motion, agreeing with the government and noting that Petitioner did not present anything "that would require that I would deviate from the standards set forth in the guidelines for determining the number of points under this category." (*Id.* at 34.) The Court ultimately sentenced Petitioner to the bottom of the Guidelines range, 70 months on each Count, to run concurrently. (*See* ECF No. 26-1 at 15.)

There is no evidence that upholding Petitioner's waiver would work a miscarriage of justice against him. Indeed, there is no evidence of a sentencing error at all. Petitioner was sentenced within the Guidelines range, and does not argue that he is innocent of any of the crimes charged. Petitioner is essentially arguing that the Court's failure to grant a motion for a downward departure is a sentencing error. It is not; by their definition, downward departures are at the sole discretion of the sentencing judge. *See U.S. v. Williams*, 510 F.3d 416 (3d Cir. 2007); *U.S. v. Georgiadis*, 933 F.2d 1219, 1222 (3d Cir. 1991).

## V. CONCLUSION

The Court concludes that because the waiver at issue is contained within a plea agreement that was signed knowingly, voluntarily, and intelligently, and because enforcing the waiver will not work a miscarriage of justice against Petitioner, the instant action is barred and Petitioner's petition is denied with prejudice.

_____
PETER G. SHERIDAN, U.S.D.J.